UNITED STATES COURT OF APPEALS
For the FIRST CIRCUIT


No. 21-1208


BRIAN WATSON, Petitioner/Appellant

v.

MICHELLE EDMARK, WARDEN, of the NEW HAMPSHIRE
STATE PRISON FOR MEN, Respondent/Appellee

_____


PETITIONER/APPELLANT'S APPEAL FROM THE
UNITED STATES DISTRICT OF NEW HAMPSHIRE

_____
_____


BRIEF FOR THE PETITIONER/APPELLANT
_____

SISTI LAW OFFICES

Mark L. Sisti, Esq.
NH Bar ID No. 2357
Sisti Law Offices
387 Dover Road
Chichester, NH 03258
(603) 224-4220

(15 minutes for oral argument)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………….........………………...……ii

JURISDICTIONAL STATEMENT...................................….……..…………......1

STATEMENT OF THE ISSUES……………………………………………...…1

STATEMENT IF THE CASE…………………………………………...………2, 3

SUMMARY OF THE ARGUMENT…………………………………………3, 4

STANDARD OF REVIEW…………………………………...………………...4, 5

ARGUMENT…………...….……………...…5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16

CONCLUSION………………….……………………………………………..17

REQUEST FOR ORAL ARGUMENT……………………….………………...18

CERTIFICATE OF SERVICE……………………….....…….….…………..…18

ADDENDUM…………………………………………………………………19

i.     Order, Case No. 19-cv-95-JL, United States District Court, District of New Hampshire, dated October 26, 2020…………………………….……20, 21

ii.    Judgment, dated November 4, 2020……………………………………22

i

# TABLE OF AUTHORITIES

**CASES:**

**NH State Cases:**

State v. Watson, 170 NH 720 @ 735 (2018)..………...……….…………..6, 12, 13

State v. Watson, 185 A.3d 845 (NH 2018)…………………………………………2

**Federal Cases:**

Ackerman v. State, 51 N.E.3d 171 (Ind. 2016) …………………………………….13

Almeder v. Town of Bourne, 922 F.Supp.2d 160, 166 (D. Mass 2013)…………..5

Bullcoming v. New Mexico, 564 U.S. 647 (2021)....................................7, 9, 10, 15

Fournier v. Massachusetts, No. 20-2134 (1st Cir. 2021)………………………4, 5

Grim v. Fisher, 816 F.3d 296 (5th Cir.)………..………………………………...13

Leger v. State, 732 S.E. 2d 53 (Ga. 2012)…..……………….…………..13, 14

Marshall v. People, 309 P.3d. 943 (Colo.2013)..……………………………….13

Pitre v. Griffin, No. 16 Civ. 6258 (BMC), 2016 WL 7442653,……………………..

   *8 (E,D,N,Y, Dec, 26, 2016……………………………………………………15, 16

State v. Lopez, 45 A.3d 1 (R.I. 2012)………………………..……………………...13

State v. Michaels, 219 N.J. 1, 95 A.3d 648 (N.J. 2014………………10, 11, 12, 17

State v. Roach, 95 A.3d 683, 688 (N.J. 2014) …………………….………….…..16

State v. Sauerbry, 447 S.W. 3d 790……...................................................................15

State v. Stanfield, 158 Idaho 327, 347 P.3d 175 (Idaho 2015...……………..........14

U.S. v. Maxwell, 724 F.3d 724, 726 (7th Cir. 2013)……..……………………..15

U.S. v. Pablo, 696 F.2d 1280 (1oth Cir. 2012)..…………..………………………15

**New Hampshire Rules of Evidence**

NH Rules of Evidence 702…………………………….......…….....……………..5, 6, 8

**U.S. Code**

22 U.S.C. 2254…………………………………………………………………..…1

28 U.S.C. § 2254 (e)(1)………………………….........……………..……1, 5, 6

## JURISDICTION STATEMENT

The jurisdiction of the United State District Court, District of New Hampshire (hereinafter referred to as N.H. District Court) was based on Mr. Watson's appeal of his conviction under 22 U.S.C. 2254. The N.H. District Court granted summary judgment in favor of the respondent on October 26, 2020 and issued an order for a certificate of appealability to this Court, which has jurisdiction over matters from the N.H. District Court. Thus, this Court has jurisdiction over this appeal.

## STATEMENT OF THE ISSUES

Mr. Brian Watson now appeals the decision of the United States District Court, District of New Hampshire (hereinafter referred to as N.H. District Court), granting summary judgment in Docket No.: 1:19-cv-0095-JL for the Respondent, the Warden for the New Hampshire State Prison. Mr. Watson contends that the findings of the New Hampshire Supreme Court (hereinafter referred to as State Court), that Dr. Isenschmid's involvement are objectively unreasonable and thus not entitled deference under 28 U.S.C. § 2254(e)(1). As such, Dr. Isenschmid's involvement in this case presents genuine issues of material fact such that the N.H. District Court erred when granting the Respondent's request for summary judgment.

**STATEMENT OF THE CASE**

On February 7, 2017, Mr. Watson was convicted of Sale of Controlled Substance with Death Resulting in Belknap County (NH) docket number 211-2015-CR-00163. Mr. Watson appealed that conviction to the State Court, claiming that his right to confront the witnesses against him under the 6th Amendment to the U.S. Constitution was violated when lab results were introduced via Dr. Daniel Isenschmid even though he was neither involved in the testing process nor offering an opinion to the jury. _See_ State v. Watson, 185 A.3d 845 (NH 2018). The State Court denied that appeal, finding Dr. Isenschmid's involvement was appropriate as it was "real and direct" and that he "testified to his own independent conclusions". Id. at 858. Mr. Watson appealed that decision to the N.H. District Court in Case Number 19-cv-95-JL. The Respondent filed for summary judgment on September 9, 2019. The N.H. District Court granted the motion for summary judgement stating that it "cannot say that the New Hampshire Supreme Court's comprehensive opinion and ruling…was contrary to, or involved an unreasonable application of, clearly established Federal law." _Order_, _Case No. 19-cv-95-JL_, U.S. District Court, Dist. of N.H., October 26, 2020. The District Court found that the case "did not involve 'mere custodian' or 'mere conduit' testimony from an analyst or criminologist unconnected with the report." Id. At the end of the order, the Court ordered the clerk to "issue a certificate of appealability" in this matter.

Pursuant to that certificate, Mr. Watson now appeals the N.H. District Court's ruling. He claims that the State Court's decision is not entitled to deference as Dr. Isenschmid's involvement in Mr. Watson's case was distinguishable from that of other witnesses cited by the State Court in support of the denial of his appeal.

## SUMMARY OF THE ARGUMENT

Mr. Watson contends that Dr. Isenschmid's testimony at trial violated his right to confront the witnesses against him as guaranteed by the 6th Amendment to the U.S. Constitution. Dr. Isenschmid testified to the specific levels of substances found in the victim's blood samples. TT at 275. However, he did not test the samples or supervise those who did. TT at 265. According to Dr. Isenschmid, the results to which he testified were then reviewed by other people prior to being released to him. Id. at 251. Dr. Isenschmid was objectively involved less than witnesses in other cases cited by the State Court in its denial. He was not on the lab floor or supervising those who were. He did not offer any instructions to lab staff nor did he conduct any independent tests of his own. Given such differing levels of involvement, the State Court's decision that Dr. Isenschmid's involvement was 'real and direct' is not entitled deference by the N.H. District Court. Thus, the N.H. District Court should have denied the motion for summary judgment in this matter.

Dr. Isenschmid was qualified as an expert. (TT at 248). However, he testified that he was not offering an opinion as to cause of death. TT at 263. To the

3

extent that he is found to have offered an opinion, his testimony was improper as his "opinion" was based on lab results that were admitted into evidence despite the fact that he did not participate in the production of the results. This distinguishes him from other expert testimony in cases cited by the State Court as the witnesses in those cases offered opinions based on evidence that was not admitted at trial.

The differences between Dr. Isenschmid's involvement in this case and that of others cited by the State Court are objectively clear. Thus, the State Court's findings are not entitled to deference by the District Court. As such, the District Court should review the Court's findings in that matter. Given that Dr. Isenschmid's involvement presents genuine issues of fact that must be adjudicated, the District Court erred in granting of summary judgement for the Respondent.

## STANDARD OF REVIEW

This Court of Appeals "review[s] a district court's grant of summary judgment de novo… and draw[s] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." _Fournier v. Massachusetts,_ No. 20-2134 (1st Cir. 2021) (internal quotations and citations omitted).

When seeking summary judgment, "[t]he burden is on the moving party to show, through the pleadings, discovery and affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." *Almeder v. Town of Bourne*, 922 F.Supp.2d 160, 166 (D. Mass. 2013). "A genuine issue of material fact exists where the evidence with respect to the material fact in dispute is such that a reasonable jury could return a verdict for the nonmoving party." Id. (internal quotations omitted). "Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." Id. "Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id.

Under Federal law, when a person applies for habeas relief from a State court judgment "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

## **ARGUMENT**

In the present case, there is a genuine dispute about an issue of material fact as to whether Dr. Isenschmid was a proper witness. Dr. Isenschmid offered testimony about the results of tests performed by analysts that he did not supervise or observe. These results were then transcribed and reviewed by at least two other people prior to Dr. Isenschmid. Because he did not participate in the testing of the

samples, and because he was ostensibly offering an opinion under Rule of Evidence 702, Dr. Isenschmid should not have been allowed to testify about the test results that were admitted into evidence. Although he was qualified as an expert to offer opinion testimony, he testified that he was not asked to offer an opinion as to the cause of death in this matter. Instead, he was asked to answer specific questions about the levels of substances found in the blood samples provided to the lab in this case. The question of whether Dr. Isenschmid provided improper surrogate testimony provides a genuine dispute of material fact such that summary judgment should not have been granted for the Respondent.

*Dr. Isenschmid was not involved in testing the samples in question*

The State Court found that Dr. Isenschmid's "participation in preparing the report and developing the substantive conclusions contained therein was real and direct." <u>State v. Watson</u> 170 N.H. 720, 735 (2018). The State Court found that his involvement "distinguishes him from the co-analyst in Bullcoming, who merely presented a blood alcohol report prepared by another [laboratory]co-employee." Id. This finding by the State Court is "presumed to be correct." 28 U.S.C. § 2254(e)(1). Mr. Watson has the "burden of rebutting this presumption by clear and convincing evidence. Id.

The State Court held that the "forensic report and testimony admitted in this case differs in several respects from what happened in *Bullcoming*." It noted that in

6

*Bullcoming v. New Mexico*, 564 U.S. 647 (2011), "the forensic report was admitted through the testimony of a co-analyst who did not observe the…analyst who performed the testing and who did not serve as a supervisor or reviewer responsible for certifying the blood alcohol results obtained by the analyst whose work was referenced in the report."

The State Court's finding that Dr. Isenschmid's involvement in creating the report was "real and direct" was objectively unreasonable. Dr. Isenschmid testified that he neither observed the testing of the samples nor was he aware of who did. On cross-examination, Dr. Isenschmid testified that he "did not do any of the laboratory work" in this case. He further stated that he is "not a supervisor of people in the laboratory" and that "[t]hey have laboratory supervisors for that. TT at 265[1].

As he noted, he did not participate in the testing or observe anyone who did. Furthermore, he stated that he "would not know" "if any of the individuals that dealt with the sample had ever been disciplined" or "failed on those random tests that had been sent over." TT at 266. Although he testified that it is possible to review tracings and instrument data, he did not specify whether he or the other two intermediate reviewers had actually looked at such data in this particular case.

---

[1] TT refers to the Trial Transcript of the trial held in Belknap Superior Court in this matter that has been submitted with this brief in the Appendix.

In its memorandum supporting the request for summary judgement, the Respondent notes that while "the State did not call the analysts [who tested the samples]…Dr. Isenschmid testified that the analysts would not understand the significance of the results." Resp. Memo in Support of Summary Judgement[2], at 17. However, the veracity and reliability of the results were issues that would have been addressed by the analysts. The question at trial was not whether the analysts understood the significance of the results, but whether the analysts had competently and accurately conducted the tests that produced such significant results. As Dr. Isenschmid made clear in his testimony: the significance of the results, whether the substances found in the samples led to Mr. Tilton-Fogg's death, was to be determined by the medical examiner. As such, the alleged lack of understanding by those conducting the tests would not have prevented them from testifying about what actions they performed and what they observed while conducting the test.

The Respondent claims that the State Court's finding that Dr. Isenschmid properly offered an opinion under Rule 702 is entitled deference. Resp. Memo at 18. However, though he was qualified as an expert, Dr. Isenschmid was not

---

[2] Resp. Memo in Support of Summary Judgment refers to the Respondent's Memorandum in Support of Summary Judgment filed in United State District Court, for the District of New Hampshire, docket no. 1:19-cv-00095-JL in this matter that has been submitted with this brief in the Appendix.

offering an expert opinion meant to shed light on some particular issue such as cause of death. The Respondent's memo points to the State Court's finding "that Dr. Isenschmid '…opined that the difference between the fentanyl and norfentanyl levels in the victim's blood indicated that the victim had ingested a large dose of fentanyl and that he died 'very shortly' after doing so.'" Id. However, Dr. Isenschmid testified that determining cause of death was the job of the medical examiner. TT at 263. He was called to testify about the "big question…the fentanyl level" in the samples that were tested in the lab. TT at 275. In so doing, he testified to the numerical results of tests that he did not perform, oversee, or initially review. Such results required no interpretation or special skill. He was asked to read a number from a chart, a number that resulted from tests he did not perform, supervise, or observe. TT at 275.  Thus, he was used in the same fashion as the analyst in *Bullcoming*.

The State contends that Dr. Isenschmid was offering expert testimony and therefore, properly testified to the findings of the lab analysts. His response to the main question he was called to answer was stated numerically. This required no interpretation by Dr. Isenschmid and therefore cannot be considered an opinion. As such, the State should have called a witness who actually participated in or observed the testing. Dr. Isenschmid was not that witness.

*Dr. Isenschmid's involvement is distinguishable from*
*that of others cited by the State Court.*

The government notes the State Court's reliance on _State v. Michaels_, 95

A.3d 648 (N.J. 2014), to distinguish _Bullcoming_ from the current case. However,

the witness in _Michaels_, Dr. Barbieri, did not testify about first and second

reviewers, as did Dr. Isenschmid. Dr. Barbieri "explained that documents are

produced by the instruments when the testing is performed and that the testing

results are printed directly from the machines." _State v. Michaels_, 219 N.J. 1, 95

A.3d 648, 672 (N.J. 2014). Those "documents are compiled for a reviewer who, in

this case, was Dr. Barbieri." Id. As in Mr. Watson's case, it is "undisputed that Dr.

Barbieri did not actually conduct the initial or confirmatory screening via gas

chromatography/mass spectrometry performed on defendant's blood." Id. at 673.

Although he did not "directly observe[] the individual analysts, who were under his

supervision, as each performed the tasks involved in the testing process" he did

supervise lab employees, unlike Dr. Isenschmid. Furthermore, in _Michaels_, the raw

data was initially provided to "a reviewer who…was Dr. Barbieri." Id. at 672.

In _Michaels_, "Dr. Barbieri supervised the technicians and analysts who

handled defendant's blood sample and performed the tests on small amounts of

that sample using the laboratory's gas chromatography/mass spectrometry

machines." Id. at 651. In this case, Dr. Isenschmid testified that he is "not a

supervisor of people in the laboratory. They have laboratory supervisors for that."
TT at 265. He further testified that he would not know if any of the analysts
involved had ever been disciplined or failed a random quality control test. Id. at
266.

Dr. Isenschimd's involvement in producing the report to which he testified
at trial is further distinguishable from that of Dr. Barbieri in _Michaels_. Dr. Barbieri,
in addition to supervising employees in the lab, was also the person who reviewed
the raw data produced from the tests they performed. Meanwhile, the raw data in
this case was reviewed by two other lab employees before it reached Dr.
Isenschmid. Id. at 250. These reviewers performed the same tasks as Dr. Barbieri.

"Dr. Barbieri testified that he reviewed the compiled calibration and quality
control documents and machine-generated test results on defendant's blood
sample." _State v. Michaels_, 95 A.3d at 674. Dr. Isenschmid, however, did not
testify that he reviewed such data. Instead, he testified that the first reviewer "will
check to see that the procedure was properly calibrated." TT at 251. The second
reviewer checks to see that "all the data that the first reviewer put into the
computer system was all properly transcribed and properly entered before those
results can be released to a toxicologist" which in this case, was Dr. Isenschmid.
Id. Thus, the State Court's finding that Dr. Isenschmid "personally reviewed the
'actual instrument data' and made sure that the data were properly entered into the

11

NMS computer" is not supported by the record and not entitled to deference. *Watson*, 170 NH at 735.

> *Dr. Isenschmid did not offer an opinion, but if he did, he did*
> *so using reports that were admitted into evidence.*

Dr. Isenschmid's involvement also differs from that of Dr. Barberi in *Michaels* in that he was not asked to give an opinion. Dr. Isenschmid was asked to answer the "big question [about] the fentanyl level" in the blood samples it received from the State. TT at 275. Although he was qualified as an expert and testified to more than just the fentanyl levels in the report, he was not asked to determine cause of death in this case. He noted that was the job of the medical examiner. TT at 263. During his direct examination, Dr. Isenschmid testified that he was not asked to give an opinion in this case. Instead, he was there to answer the "big question" related to "the fentanyl level" in the samples provided to NMS Labs. TT at 275.

On the other hand, Dr. Barbieri was asked to give an opinion in *Michaels* as to whether the level of certain substances found in the defendant's blood was indicative of impairment. Thus, he "could rely on inadmissible hearsay evidence in forming his independent opinion." *State v. Michaels*, 95 A.3d at 655.

In the present case, Dr. Isenschmid did not rely on the test results to provide an independent opinion to the jury. Instead, he testified to the findings of test

results that he did not perform or supervise. Thus, contrary to the State Court's holding, he was "repeating the findings and conclusions of the analysts who manned the gas chromatograph/mass spectrometry devices." *Watson* 170 NH at 735.

### The witnesses' involvement in cases cited by the State Court to support its findings is distinguishable from Dr. Isenschmid's involvement.

The State Court offered a myriad of cases where other courts "found no Confrontation Clause violation(s) under similar circumstances." However, the facts related to analysts, reviewers and witnesses in many of those cases are distinguishable from those in this case. In some of the cases, the challenged witness either supervised the analyst who performed the test or initially reviewed the materials and conduct quality control checks. In others, the witnesses offered opinions based on reports or data that was not entered into evidence.

*Dr. Isenschmid was not a supervisor or an initial reviewer.*

In cases such as *Grim v. Fisher*, 816 F.3d 296 (5th Cir.); *State v. Lopez*, 45 A.3d 1 (R.I. 2012); and *Ackerman v. State*, 51 N.E.3d 171 (Ind. 2016), the witnesses **actually** supervised the analysts while the tests were being performed.

In *Marshall v. People*, 309 P.3d 943 (Colo. 2013), the challenged witness was the first person to review the test results and conduct quality assurance checks to insure the accuracy of the test. In *Leger v. State*, 732 S.E.2d 53 (Ga. 2012) the

court noted that the witness, who was a lab supervisor, was also responsible for instructing the analysts regarding sample selection and the testing process to employ.

In *State v. Stanfield*, 158 Idaho 327, 347 P.3d 175 (Idaho 2015), the witness was a lab supervisor and had provided some instruction to the analyst conducting the test. Furthermore, the court found that the witness in that case was offering an expert opinion, not simply relaying facts. The Idaho Court held that "expert testimony that does nothing more than relay otherwise inadmissible hearsay to the jury is barred by I.R.E. 703." Id.

Each of the witnesses in the previously mentioned cases was objectively more involved than Dr. Isenschmid in the present case. Those witnesses were either present on the lab floor, observed the tests, or conducted independent tests prior to testifying. Dr. Isenschmid was not on the lab floor and did not observe or conduct any tests. At best, he looked at the instrument data in conducting his review of the report. His involvement was clearly distinguishable from that of the witnesses in cases cited by the State Court. Given the State Court's reliance on comparisons to witnesses in those cases in finding Dr. Isenschmid was a proper witness, such a decision was objectively unreasonable and not entitled to deference by reviewing courts.

*Dr. Isenschmid offered an opinion based on the report that was admitted into evidence in this case despite having not participated in the tests that produced the results therein.*

To the extent Dr. Isenschmid is found to have offered an opinion, the toxicology report to which he testified should not have been introduced into evidence. In cases cited by the State Court to distinguish this case from others, the witnesses did not testify to reports or documents that were admitted into evidence. In the present case, the results from the lab were admitted as an exhibit and shown to the jury during his re-direct examination. TT at 273. Thus, Dr. Isenschmid offering an opinion about that evidence distinguishes him from the other witnesses in the other cited cases.

In *State v. Sauerbry*, 447 S.W. 3d 780, the witness offered an opinion formed after reviewing the results of an autopsy performed by another examiner. However, in that case, the initial examiner's findings and conclusions were not admitted into evidence. Similarly, in *U.S. v. Maxwell*, 724 F.3d 724, 726 (7th Cir. 2013), the witness was found to be offering an independent opinion based on other evidence that was not introduced at trial.

In *U.S. v. Pablo*, 696 F.3d 1280 (10th Cir. 2012), the court "distinguish[ed] Pablo's case from *Bullcoming*,…[because]… the challenged report was actually admitted into evidence in *Bullcoming*, but not in this case." In *Pitre v. Griffin*, 16 Civ. 6258 (BMC), 2016 WL 7442653, at *8 (E.D.N.Y. Dec. 26, 2016), one witness

15

offered an opinion based on the results of testing performed by another analyst (Dr. Lansky). "Significantly, however, neither the DNA reports nor Dr. Lansky's analysis were received in evidence." Id. In Mr. Watson's case, Dr. Isenschmid testified to results produced by another analyst and those results were admitted into evidence.

In _State v. Roach_, 95 A.3d 683, 688 (N.J. 2014), the witness completed an independent review of the materials in forming the opinion she shared with the jury. She described how she reviewed the file, compared the data from her test to those of the other analyst, and came to her own independent conclusion. Dr. Isenschmid did not conduct any tests on any of the samples in question. He only reviewed the materials and data.

Dr. Isenschmid was not a lab analyst or supervisor. He did not conduct any tests, whether initially or during his review. Therefore, the State Court's findings that his involvement was "real and direct" should not be given deference and the N.H. District Court should not have granted summary judgment for the Respondent. Meanwhile, he did not conduct any independent testing or reviews of his own. Thus, any opinions he offered were improper as the report to which he opined was admitted into evidence during his testimony.

# CONCLUSION

Given Dr. Isenschmid's testimony and how distinguishable his actions (or lack thereof) are from witnesses in the previously cited cases, the State Court's findings that his involvement in the testing was real and direct should not be given deference. The State Court compared Dr. Isenschmid's involvement in this case to that of Dr. Barberi in *State v. Michaels*. However, Dr. Barberi (and others in cited cases) were far more involved that Dr. Isenschmid. Furthermore, though qualified as an expert, he made it clear that he was not offering an opinion as to cause of death when testifying to the report that was admitted into evidence. If he was testifying as a fact witness, he should have been more involved. If he was offering an opinion, he should not have testified to the reports that were admitted into evidence. Either way, the propriety of his testimony in this case presents a genuine issue of material fact for the N.H. District Court to adjudicate. Thus, the N.H. District Court should have denied the Respondent's motion for summary judgment.

## REQUEST FOR ORAL ARGUMENT

Mr. Watson requests 15 minutes of oral argument before the full court.

Respectfully submitted,

October 12, 2021

/s/ Mark L. Sisti
**Signature**
Mark L. Sisti
***Print Name***
387 Dover Road
***Address***
Chichester    NH       03258
***City***     ***State***     ***Zip Code***
(603) 224-4220
***Phone Number***

## CERTIFICATION

I hereby certify that a copy of this appearance was forwarded to Senior Assistance Attorney General Elizabeth Woodcock, of the NH Attorney General's Office electronically through EFC on October 12, 2021.

October 12, 2021

/s/ **Mark L. Sisti**
***Signature***

Mark L. Sisti
***Print Name***

UNITED STATES COURT OF APPEALS
For the FIRST CIRCUIT


No. 21-1208


BRIAN WATSON, Petitioner/Appellant

v.

MICHELLE EDMARK, WARDEN, of the NEW HAMPSHIRE
STATE PRISON FOR MEN, Respondent/Appellee

---

PETITIONER/APPELLANT'S APPEAL FROM THE
UNITED STATES DISTRICT OF NEW HAMPSHIRE

---

---

ADDENDUM TO BRIEF FOR THE PETITIONER/APPELLANT

---

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Brian Watson

    v.                                Case No. 19-cv-95-JL

NH State Prison, Warden

ORDER

    After carefully reviewing and considering counsel's post-oral argument submissions, the motion for summary judgment (Doc. 6) is granted, and the petitioner's request for habeas relief from a state court conviction is therefore denied for the reasons stated by the court at oral argument, the record of which is incorporated herein by reference. Although the requirements of the _Crawford_ line of cases have not been developed and refined with perfect clarity, this court cannot say that the New Hampshire Supreme Court's comprehensive opinion and ruling – the factual findings of which are presumed correct and only properly overcome by clear and convincing evidence, 29 USC §2254(e)(1) --was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the US Supreme Court in _Crawford_, _Melendez-Diaz_, _Bullcoming_, or _Williams_ (to the extent any single holding can be gleaned from Williams). The case did not involve unaccompanied testimonial affidavits, certifications, or reports, and did not involve "mere custodian" or "mere conduit" testimony from an analyst or criminologist unconnected with the report (which here was authored and signed by the witness in question) or the work described. The Supreme Court has not held that the Sixth Amendment requires that all laboratory personnel working with or making findings regarding a given sample within a team of criminologists or analysts must testify at trial in support of a

toxicology opinion.  <u>See</u> <u>also</u> <u>Washington v. Griffin</u>, 876 F. 3d 395 (2d Cir. 2017).

The clerk shall issue a certificate of appealability.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Date: October 26, 2020

cc:   Mark Sisti, Esq.
      Elizabeth Woodcock, Esq.

21

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Brian Watson

    v.

NH State Prison, Warden            Case No. 19-cv-95-JL


### JUDGMENT

    Judgment is hereby entered in accordance with the Order of Judge
Joseph N. Laplante, which includes a certificate of appealability,
dated October 26, 2020.

                    By the Court:

                    Daniel J. Lynch
                    Clerk of Court


Date: November 4, 2020


cc:
Mark Sisti, Esq.
Elizabeth Woodcock, Esq.

22